UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| Wenzhen Gao a/k/a Wen Gao a/k/a Wen Zhen Gao,<br><br>                              Plaintiff,<br><br>                 -against-<br><br>Citibank N.A.; The Goldman Sachs Group, Inc.; Capital One Financial Corporation; American Express Company; Trans Union LLC a/k/a TransUnion; Experian Information Solutions, Inc.; and Equifax Information Services LLC,<br><br>                              Defendants. | Civil Action<br>Case No.: 1:25-cv-03075<br><br>**COMPLAINT** |

Plaintiff Wenzhen Gao a/k/a Wen Gao a/k/a Wen Zhen Gao ("Plaintiff"), by and through her attorneys, Petroff Amshen LLP, as and for her complaint against the defendants named herein (collectively, "Defendants"), hereby alleges the following upon personal knowledge, review of public record, and/or otherwise upon information and belief:

1.      Plaintiff brings this action for damages arising under the Fair Credit Reporting Act ("FCRA") (15 U.S.C. § 1681, *et seq.*) and its implementing Regulation V (12 C.F.R. Part 1022), and the Fair Credit Billing Act ("FCBA") (15 U.S.C. § 1666, *et seq.*), resulting from Defendants' willful and ongoing violations of consumer credit protection laws, including failure to investigate and correct inaccurate credit reporting resulting from identity theft, and unlawful attempts to collect on a fraudulent debt.

2.      Congress enacted the FCRA "to require that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit . . . in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information [...]" 15 U.S.C. § 1681.

3.    Thus, because "[c]onsumer reporting agencies have assumed a vital role in assembling and evaluating consumer credit and other information on consumers," Congress determined that the protections of the FCRA were necessary "to insure that consumers reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumers' right to privacy." *See id.*

4.    The FCRA also imposes a duty upon the furnishers of information to consumer reporting agencies to provide accurate information relating to consumers, and to correct and update any consumer information the furnisher determines is incomplete or inaccurate. *See* 15 U.S.C. § 1681s-2.

5.    Despite Defendants' "grave responsibilities" to ensure the accuracy and proper utilization of Plaintiff's credit information, Defendants ignored Plaintiff's pleas for help and instead further perpetuated the damages caused by the identity theft, causing Plaintiff to suffer increased and ongoing credit damage, a wrongfully imposed debt nearing collections, the dissemination of personally damaging information, and other damages.

6.    Unbeknownst to Plaintiff, an identity thief stole her personal information and not only used it to attempt to open new accounts in her name but also utilized her existing credit cards to withdraw money and make purchases that are now being charged to Plaintiff's account, for which she should not be held responsible. The identity thief is also trying to make other purchases and open credit cards in multiple financial entities, resulting in inquiries that are increasingly affecting Plaintiff's credit score.

7.    Although Plaintiff took every possible measure to report the fraud and restore her good credit, the Defendants failed and refused to investigate or correct the errors, and continued furnishing and reporting inaccurate information, and attributing the fraudulent charges to Plaintiff.

## PARTIES

8.      Plaintiff is an individual residing in the county of Hampden, Massachusetts.

9.      Defendant Citibank, N.A. ("Citibank") is a national banking association organized and existing under the laws of the United States of America, with its headquarters at 388 Greenwich Street, New York, New York 10013.

10.      Defendant The Goldman Sachs Group, Inc. ("Goldman Sachs") is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 200 West Street, New York, New York 10280.

11.      Defendant Capital One Financial Corporation ("Capital One") is a corporation organized under the laws of the State Delaware, with its headquarters located at 1680 Capital One Drive, McLean, Virginia 22102. Capital One is one of the largest financial institutions in the United States, offering a range of financial products, including credit cards, banking, and loans.

12.      Defendant American Express Company ("AMEX") is a multinational financial services corporation organized and existing under the laws of the United States of America, with its principal place of business at 200 Vesey Street, New York, New York 10285.[1]

13.      Defendant Trans Union LLC a/k/a TransUnion; is a limited liability company organized under the laws of the State of Delaware, with its principal place of business at 555 West Adams Street, Chicago, Illinois 6066. The company is also known as "TransUnion" and shall be referred to as such herein. TransUnion is one of the three national credit reporting agencies ("CRAs") recognized by the Federal Trade Commission ("FTC").

14.      Defendant Experian Information Solutions, Inc. ("Experian") is a corporation organized under the laws of the State of Ohio, with its principal place of business at 475 Anton

---

[1] Citibank, Goldman Sachs, Capital One and AMEX shall be referred to collectively herein as the "Furnisher Defendants".

Boulevard, Costa Mesa, California 92626. Experian is a wholly owned subsidiary of Experian

Holdings, Inc. Experian is one of the three national CRAs recognized by the FTC.

15.     Defendant Equifax Information Services LLC ("Equifax") is a limited liability

company organized under the laws of the State of Georgia, with its principal place of business at

1550 Peachtree Street NW, Atlanta, Georgia 30309. Equifax is a wholly owned subsidiary of

Equifax Inc. Equifax is one of the three national CRAs recognized by the FTC.[2]

## JURISDICTION

16.     This Court has jurisdiction pursuant to 28 U.S.C § 1331, as Plaintiff's claims

substantially arise under federal law.

17.     Venue in this district is proper pursuant to 28 U.S.C. § 1391(b), as a substantial part

of the events giving rise to Plaintiff's claims occurred in this district, and Defendants Citibank,

Goldman Sachs, and Amex's headquarters are located in this district.

## STATEMENT OF FACTS

18.     Plaintiff is an individual consumer who was a victim of identity theft.

19.     Citibank is the issuer of the THD/CBNA ("The Home Depot Account") listed in

the credit reports supplied to Plaintiff by the CRAs.

20.     From May 27, 2023 to July 2, 2023, Plaintiff embarked on a journey to China,

anticipating a period of personal and professional enrichment. However, upon her return to the

United States, Plaintiff was confronted with a shocking reality.

21.     Plaintiff's mobile phone had been compromised and illicitly transferred to an

unfamiliar carrier. The breach rendered her unable to access her device or retain her original

number, forcing her to procure a new phone.

---

[2] Transunion, Experian and Equifax shall be referred to collectively herein as the "CRAs".

22.     The violation extended beyond Plaintiff's mobile device. Plaintiff discovered that her Gmail and Yahoo email accounts had been infiltrated, locking her out of essential personal and professional communications. More alarmingly, unauthorized access to several of her bank accounts was detected, amplifying Plaintiff's distress.

23.     The accounts affected by fraudulent transactions are as follows:

- **GS BANK USA ("Goldman Sachs Account")**
  Account No. 13001110044***
  Date Opened: 03/06/2023
  Shown on credit report by TransUnion and Equifax

- **THD/CBNA (The Home Depot Account)**
  Account No. 603532095806****
  Date Opened: 06/01/2019
  Shown on credit report by Experian

24.     Prior to Plaintiff's departure to China, she maintained an impeccable financial record, being extremely punctual in her payments and devoid of any substantial debts to financial institutions. The contrast between her previous financial stability and the chaos she returned to was both shocking and debilitating.

25.     Determined to rectify the situation, Plaintiff contacted the pertinent financial institutions to gather information and contest the fraudulent transactions.

26.     In July 2023, Plaintiff reached out to Goldman Sachs to dispute the unauthorized transactions. Worried about how this debt would affect her previously pristine credit score, and having been told there was nothing they could do about the account, she paid the fraudulent debt to avoid late remarks.

27.     Regarding the Home Depot Account, a balance of $5,839 had accumulated due to fraudulent purchases made during Plaintiff's time in China.

28.    The fraudulent purchases were made between May and July 2023, and were neither made nor authorized by her. It is unjust for her to suffer the financial and reputational consequences of these illicit activities.

29.    Both compromised credit cards are linked to addresses entirely unfamiliar to Plaintiff, locations which she has no association with. The addresses are as follows:

- 6701 11th Ave STE A, Brooklyn, New York 11219
- 6905 8th Ave APT 107, Brooklyn, New York 11228

30.    Exhausting all her resources on December 19, 2023, Plaintiff sent a Notice of Dispute to the CRAs delineating her situation. *See* **Exhibit A**. Accompanying this notice were the following documents:

- Proof of Current Address
- Passport with entry stamps
- Wilbraham Police Department Incident Report
- Identity Theft Report (FTC)

31.    Despite the submission Plaintiff received neither acknowledgement nor resolution, leaving her in a state of uncertainty and frustration.

32.    The ramifications of these unresolved issues extend beyond mere numbers on a credit report. The unpaid balances and tarnished payment history are not only affecting her financial credibility but are also taking severe toll on her mental wellbeing.

33.    Derogatory marks persist on her credit report and have not been removed despite her diligent efforts.

34.    As a result of the fraud, the thief opened three bank accounts under Plaintiff's name, for which she has been held responsible. This demonstrates that the fraud has continued to occur and is affecting Plaintiff's daily life. The accounts are as follows:

- **CAPITALONE**
  Account No. 510875051344****
  Date Opened: December, 2024
  Shown by: TransUnion and Experian

- **AMEX**
  Account No. 349993317947****
  Date Opened: December, 2024
  Shown by: Experian

35.    These accounts not only show the extent to which the identity theft has progressed but also highlight the lack of investigation conducted by the furnishers, and the inadequacy of procedures for opening accounts and reporting information.

36.    The situation has become unbearable and overwhelming for Plaintiff. The identity thief continues to exploit her personal information attempting to procure additional credit cards and financial products from various institutions.

37.    This is evidenced by the inquiries made to her credit report that she does not recognize. The inquiries are shown in the CRAs' credit reports as follows:

- JPMCB CARD: Inquired: 06/04/2023 (Experian)
- ELAN FINANCIAL SERVICE: Inquired: 06/07/2023 (Experian)
- TD BANK: Inquired: 06/10/2023
- DISCOVER FIN: Inquired: 06/11//2023 (Experian)
- CITI CARDS: Inquired: 06/29/2023 (Experian)
- CAP1/BERGD: Inquired: 12/04/2024 (Experian)
- AMERICAN EXPRESS: Inquired: 12/06/2024 (Experian)
- CAPITALONE: Inquired: 12/15/2024 (Experian)
- WFBNA CARD: Inquired: 12/15/2024 (Experian)
- CBNA/WAYMC: Inquired: 06/11/2023 (Equifax)
- CITIBANK: Inquired: 06/29/2023 (Equifax)
- CBNA: Inquired: 07/05/2023 (Equifax)
- CAP1/BERGD: Inquired: 12/04/2024 (TransUnion)
- AMERICAN EXPRESS: Inquired: 12/06/2024 (TransUnion)

- CAPITAL ONE: Inquired: 12/15/2024 (TransUnion)

38. This relentless assault on her identity and finances has plunged her into a state of perpetual anxiety and distress, any individual should endure.

39. Plaintiff is deeply concerned about the potential long-term effect that these remarks may have on her credit score and financial reputation. The discovery of these remarks has caused emotional distress, as the Plaintiff now faces financial liability for accounts she did not use, as she was not in the country.

## VIOLATIONS OF THE FCRA
### (15 U.S.C. § 1681, *et seq.*)

40. Plaintiff incorporated by reference each of the preceding paragraphs as though fully set forth herein.

41. Plaintiff is a "consumer" as defined by the FCRA. *See* 15 U.S.C § 1681a(c).

42. The Furnisher Defendants are each a "furnisher" of information to consumer reporting agencies, with a duty to fulfill the statutory responsibilities enumerated under 15 U.S.C § 1681s-2, including providing accurate information relating to consumers.

43. The Furnisher Defendants are also each a "person" as defined by the FCRA. *See* 15 U.S.C. § 1681a(b).

44. Subpart E of Regulation V, the FCRA's implementing regulation, applies to furnishers of information, including Furnisher Defendants. *See* 12 C.F.R. §§ 1022.1, 1022.40.

45. Each of the CRAs is a "consumer reporting agency" or "CRA" as defined by the FCRA. *See* 15 U.S.C § 1681a(f).

46. The CRAs individually qualify as a "consumer reporting agency that compiles and maintains files in consumer on nationwide bases," as defined by the FCRA. *See* 15 U.S.C. §1681a(p).

### COUNT I
**Willful Reporting of Inaccurate Information to Consumer Reporting Agencies**
**(15 U.S.C. §§ 1681s-2, 1681n)**
*As To The Furnisher Defendants*

47.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

48.     The FCRA prohibits furnishers from reporting information to a CRA "with actual knowledge of errors" and "after notice and confirmation of errors." *See* 15 U.S.C. § 1681s-2(a)(1).

49.     Specifically, "[a] person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate." *See* 15 U.S.C. § 1681s-2(a)(1)(A). "The term 'reasonable cause to believe that the information is inaccurate' means having specific knowledge, other than solely allegations by the consumer, that would cause a reasonable person to have substantial doubts about the accuracy of the information." 15 U.S.C. § 1681s-2(a)(1)(D).

50.     Regulation V provides that "[e]ach furnisher must establish and implement reasonable written policies and procedures regarding the accuracy and integrity of the information relating to consumers that it furnishes to a consumer reporting agency," and "review its policies and procedures required by this section periodically and update them as necessary to ensure their continued effectiveness." *See* 12 C.F.R. § 1022.42.

51.     Regulation V defines "accuracy" as:

[I]nformation that a furnisher provides to a consumer reporting agency about an account or other relationship with the consumer [that] correctly: (1) [r]eflects the terms of and liability for the account or other relationship; (2) [r]eflects the consumer's performance and other conduct with respect to the account or other relationship; and (3) [i]dentifies the appropriate consumer.

52.     Additionally, "[a] person shall not furnish information relating to a consumer to any consumer reporting agency if –(i) the person has been notified by the consumer, at the address

specified by the person for such notices, that specific information is inaccurate; and (ii) the information is, in fact, inaccurate." *See* 15 U.S.C. § 1681s-2(a)(1)(B).

53.    "If the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the consumer." 15 U.S.C § 1681s-2(a)(3).

54.    Upon receipt of a notice of dispute regarding the completeness or accuracy of information provided to a CRA under 15 U.S.C. § 1681i(a)(2), a furnisher of the disputed information must conduct a timely investigation and correct and discontinue any inaccurate reporting. *See* 15 U.S.C. § 1681s-2(b).

55.    A furnisher who receives an identity theft report from a consumer is also prohibited from furnishing information to a CRA that is the result of such identity theft. *See* 15 U.S.C. § 1681s-2(a)(6)(B).

56.    Plaintiff disputed the fraudulent withdrawals and purchases directly to the Furnisher Defendants, and in the Notice of Dispute sent to the CRAs. Plaintiff also filed an identity theft report with the FTC, which was included with the Notice of Dispute.

57.    Upon information and belief, the Furnisher Defendants received notice of Plaintiff's Notice of Dispute regarding the accuracy of information furnished to the CRAs concerning the fraudulent purchases for which the Plaintiff is now being held responsible.

58.    The Furnisher Defendants failed to review the information provided by Plaintiff in connection with the notice of dispute and failed to contact Plaintiff for any additional information.

59.    The Furnisher Defendants also deliberately failed and refused to conduct a proper or timely investigation of Plaintiff's dispute, or to correct the disputed information.

60. The Furnisher Defendants reported inaccurate account information regarding Plaintiff's multiple fraudulent transactions to the CRAs, without notice that the information was disputed, which was then incorporated into Plaintiff's report issued by the CRAs, all as the result of identity theft.

61. The inaccurate information included: (i) attributing the debt and responsibility for the fraudulent charges to Plaintiff; (ii) misrepresenting the account balances by including the disputed, fraudulent transactions, and the related improper fees and interest; and (iii) reporting the accounts as past due when the charges are a result of the identity theft.

62. The Furnisher Defendants have continued inaccurately reporting information to the CRAs regarding Plaintiff's fraudulent transactions in violation of 15 U.S.C § 1681s-2.

63. The Furnisher Defendants' deliberate and ongoing furnishing of inaccurate and disputed information regarding Plaintiff's account has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and prevention of any potential collection action arising from the fraudulent transactions, dissemination of wrongful information to third parties, emotional distress, and other actual damages.

64. As a result of the Furnisher Defendants' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C § 1681n, including: (i) actual damages; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred in connection with this action.

## COUNT II
**Negligent Reporting of Inaccurate Information to Consumer Reporting Agencies**
**(15 U.S.C. §§ 1681s-2, 1681o)**
*As To Furnisher Defendants*

65.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

66.     Upon information and belief, the Furnisher Defendants furnished inaccurate information regarding Plaintiff's fraudulent transactions to the CRAs, which was incorporated into Plaintiff's credit file and credit reports.

67.     As parties to the applicable account agreements, and compilers and furnishers of information concerning the fraudulent transactions, the Furnisher Defendants had a duty to ensure Plaintiff's account history and information was accurately recorded and maintained, and to ensure the accuracy of any such information furnished to the CRAs.

68.     Upon information and belief, after multiple attempts at communication and receiving Plaintiff's Notice of Dispute regarding the identity theft and fraudulent transactions, the Furnisher Defendants thereafter negligently failed and refused to conduct any required investigation or to correct the disputed information, and have continued inaccurately furnishing information to the CRAs regarding the fraudulent transactions, including falsely representing that Plaintiff is a credit risk, in violation of 15 U.S.C. §§ 1681s-2(a)(2) and 1681s-2(a)(8).

69.     The Furnisher Defendants has further negligently persisted in reporting inaccurate information to the CRAs without providing notice that Plaintiff has disputed such information, in violation of 15 U.S.C. § 1681s-2(3).

70.     The Furnisher Defendants' negligent and ongoing furnishing of inaccurate and disputed information regarding Plaintiff's account has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden

resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and prevention of any potential collection action arising from the fraudulent transactions and the dissemination of wrongful information to third parties, emotional distress, and other actual damages.

71.     As a result of the Furnisher Defendants' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred.

### COUNT III
**Willful Failure to Block Information Resulting from Identity Theft**
**(15 U.S.C. §§ 1681c-2, 1681n)**
*AS TO THE CRAS*

72.     Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

73.     The FCRA requires CRAs to block the reporting of information resulting from identity theft when notified by the consumer:

> [A] consumer reporting agency shall block the reporting of any information in the file of a consumer that the consumer identifies as information that resulted from an alleged identity theft, not later than 4 business days after the date of receipt by such agency of-- (1) appropriate proof of the identity of the consumer; (2) a copy of an identity theft report; (3) the identification of such information by the consumer; and (4) a statement by the consumer that the information is not information relating to any transaction by the consumer.

74.     The CRAs are further required to notify the furnisher of such information "(1) that the information may be a result of identity theft; (2) that an identity theft report has been filed; (3) that a block has been requested under this section; and (4) of the effective dates of the block." 15 U.S.C. § 1681c-2(b).

75.     If a CRA declines to block, or rescinds a block, of information resulting from identity theft, it must promptly notify the consumer "in the same manner as consumers are notified of the reinsertion of information under section 1681i(a)(5)(B) of this title." *See* 15 U.S.C. § 1681c-2(c).

76.     On December 19, 2024, Plaintiff mailed copies of the Notice of Dispute addressed to the CRAs, via certified mail.

77.     Accordingly, within four (4) business days of the receipt of the Notice of Dispute, each of the CRAs was obligated and required to block the reporting of information in Plaintiff's file resulting from the identity theft.

78.     Upon information and belief, the CRAs further willfully declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c).

79.     The CRAs' willful failure to block the reporting information in Plaintiff's file resulting from identity theft has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, damages related to dissemination of wrongful information to third parties, emotional distress and other actual damages.

80.     As a result of the CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred.

## COUNT IV
### Negligent Failure to Block Information Resulting from Identity Theft
### (15 U.S.C. §§ 1681c-2, 1681o)
### *AS TO THE CRAS*

81.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

82.    Upon receipt of the Notice of Dispute, each of the CRAs was obligated and required to block the reporting information in Plaintiff's credit file resulting from the identity theft.

83.    Upon information and belief, the CRAs negligently failed to timely implement the required block pursuant to 15 U.S.C. § 1681c-2(a).

84.    Upon information and belief, the CRAs further negligently declined to block the information and/or rescinded the block without authority or investigation, and without notifying Plaintiff, in violation of 15 U.S.C. § 1681c-2(c).

85.    The CRAs' negligent failure to block the reporting of information in Plaintiff's file resulting from identity theft has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, damages related to the mischaracterization of her credit history to third parties, emotional distress, and other actual damages.

86.    As a result of the CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred.

## COUNT V
**Willful Failure to Assure Accuracy of Consumer Information in Credit Report
(15 U.S.C. §§ 1681e(b), 1681n)
*AS TO THE CRAS***

87.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

88.    "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

89.    The CRAs each received Plaintiff's Notice of Dispute demonstrating that Plaintiff was the victim of identity theft, and evidence that Plaintiff's credit report contained inaccurate information.

90.    Despite receipt of the foregoing, the CRAs deliberately failed and refused to undertake a reasonable investigation to ensure the accuracy of reported information concerning Plaintiff's fraudulent withdrawals and purchases, late remarks and multiple attempts to open accounts.

91.    Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit report was inaccurate, the CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff or Furnisher Defendants for any additional information that would assist in a reasonable investigation.

92.    Accordingly, the CRAs' continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees, and the

mischaracterization of her credit history, and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

93.    The CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their reports was malicious, intentional, reckless, and willful.

94.    As a result of the CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred.

## COUNT VI
### Willful Failure to Assure Accuracy of Consumer Information in Credit Report
### (15 U.S.C. §§ 1681e(b), 1681n)
### *AS TO THE CRAS*

95.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

96.    "Whenever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

97.    The CRAs each received Plaintiff's Notice of Dispute demonstrating that Plaintiff was the victim of identity theft, and evidence that Plaintiff's credit report contained inaccurate information.

98.    Despite receipt of the foregoing, the CRAs deliberately failed and refused to undertake a reasonable investigation to ensure the accuracy of reported information concerning Plaintiff's fraudulent transactions.

99.    Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit report was inaccurate, the CRAs failed and

refused to properly review it, and further failed and refused to contact Plaintiff or Furnisher Defendants for any additional information that would assist in a reasonable investigation.

100.    Accordingly, the CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery and rectify the mischaracterization of her credit history, emotional distress, and other actual damages.

101.    The CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their reports was malicious, intentional, reckless, and willful.

102.    As a result of the CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred.

## <u>COUNT VII</u>
**Negligent Failure to Assure Accuracy of Consumer Information in Credit Report**
**(15 U.S.C. §§ 1681e(b), 1681o)**
*AS TO THE CRAS*

103.    Plaintiff incorporates by reference each of the preceding paragraphs as thoughtfully set forth herein.

104.    Despite receipt of evidence that Plaintiff's credit report contained inaccurate information, the CRAs failed to establish and follow reasonable procedures to promptly investigate and ensure the accuracy of reported information concerning Plaintiff's multiple fraudulent transactions.

105.    Accordingly, the CRAs continued producing credit reports for Plaintiff containing inaccurate and damaging credit information, causing Plaintiff to suffer damages including loss and reduction of credit, dissemination of wrongful information to third parties, damage to her credit rating, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

106.    As a result of the CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred.

<u>**COUNT VIII**</u>
**Willful Failure to Assure Accuracy of Consumer Information in Credit File**
**(15 U.S.C. §§ 1681i, 1681n)**
*AS TO THE CRAS*

107.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

108.    "[I]f the completeness or accuracy of any item of information contained in a consumer's file at a consumer reporting agency is disputed by the consumer and the consumer notifies the agency . . . of such dispute, the agency shall, free of charge, conduct a reasonable reinvestigation to determine whether the disputed information is inaccurate and record the current status of the disputed information, or delete the item from the file . . . ." 15 U.S.C. § 1681i(a)(1)(A).

109.    This investigation must be completed within thirty (30) days of the CRA's receipt of notice of the dispute. *See id.*

110.    The CRAs must also provide notice of the dispute to any furnisher of the disputed information, within five (5) business days of receipt.

111.    "In conducting any reinvestigation under paragraph (1) with respect to disputed information in the file of any consumer, the consumer reporting agency shall review and consider all relevant information submitted by the consumer in the period described in paragraph (1)(A) with respect to such disputed information." 15 U.S.C. § 1681i(a)(4).

112.    Within five (5) business days of completing a reinvestigation, a CRA must provide the consumer with written notice of the results and additional statutory notices.

113.    Upon receipt of Plaintiff's Notice of Dispute, the CRAs deliberately failed and refused to undertake the required reinvestigation of Plaintiff's credit file, and to ensure the accuracy of reported information concerning Plaintiff's multiple fraudulent withdrawals, purchases, late remarks, and attempts to open accounts.

114.    Although the information Plaintiff provided should have been sufficient to verify that the disputed information in Plaintiff's credit file was inaccurate, the CRAs failed and refused to properly review it, and further failed and refused to contact Plaintiff for any additional information that would assist in a reasonable investigation.

115.    Upon information and belief, the CRAs deliberately failed to provide notice of Plaintiff's disputes to the Furnisher Defendants, as required under 15 U.S.C. § 1681i(a)(2).

116.    Upon information and belief, the CRAs also failed to provide Plaintiff with written notice of the results of the investigation, or any of the additional required statutory notices, in violation of 15 U.S.C. § 1681i.

117.    The CRAs further deliberately failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file, causing Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, dissemination of wrongful information to third parties, increased debt and financial burden resulting from improperly imposed fees, interest, and

late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

118.    The CRAs' failure to follow reasonable procedures to ensure maximum possible accuracy of the information in their credit files was malicious, intentional, reckless, and willful.

119.    As a result of the CRAs' willful conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681n, including: (i) actual damages; (ii) statutory damages; (iii) punitive damages; and (iv) recovery of attorneys' fees and costs incurred.

## COUNT IX
### Negligent Failure to Assure Accuracy of Consumer Information in Credit File
### (15 U.S.C. §§ 1681i, 1681o)
### *As To The CRAs*

120.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

121.    Upon receipt of Plaintiff's Notice of Dispute, the CRAs had a duty to undertake the required reinvestigation of Plaintiff's credit file, and to ensure the accuracy of reported information concerning Plaintiff's multiple fraudulent withdrawals and purchases, late remarks, and attempts to open accounts.

122.    The CRAs failed to investigate Plaintiff's dispute or to properly consider the information Plaintiff submitted in connection with the dispute, and further failed and refused to contact Plaintiff, or the Furnisher Defendants, for any additional information that would assist in a reasonable investigation.

123.    The further failed to correct inaccurate and damaging credit information contained in Plaintiff's credit file, or to provide Plaintiff with written notice of the results and additional required statutory notices, in violation of 15 U.S.C. § 1681i.

124.    The CRAs' failure to follow reasonable procedures to assure maximum possible accuracy of the information in their credit files, and failure to correct inaccurate and damaging credit information contained in Plaintiff's credit file, has caused Plaintiff to suffer damages including loss and reduction of credit, damage to her credit rating, dissemination of wrongful information to third parties, increased debt and financial burden resulting from improperly imposed fees, interest, and late charges, payment of attorneys' fees and other costs to retain professionals to assist with credit recovery, emotional distress, and other actual damages.

125.    As a result of the CRAs' negligent conduct in violation of the FCRA, Plaintiff has been damaged and is entitled to damages pursuant to 15 U.S.C. § 1681o, including: (i) actual damages; (ii) statutory damages; and (iii) recovery of attorneys' fees and costs incurred.

### VIOLATION OF THE FCBA
### (15 U.S.C. § 1666, *et seq.*)

126.    Plaintiff incorporates by reference each of the preceding paragraphs as though fully set forth herein.

127.    Pursuant to the FCBA, if a consumer disputes any item of information contained in their credit file or billing statement, and such dispute is directly conveyed to the creditor or consumer reporting agency, the creditor or consumer reporting agency must promptly investigate the dispute review the information provided, and correct any inaccuracies or errors, unless the dispute is deemed frivolous or irrelevant.

128.    Specifically, if after conducting the re-investigation, the creditor or consumer reporting agency cannot verify the disputed information, or confirm an error, the creditor or reporting agency must:

    a.    Promptly expunge the erroneous item and otherwise correct the file.

    b.    Refrain from reporting the disputed item in subsequent consumer reports.

    c.   Clearly and conspicuously disclose to the consumer their rights, including their right to request a notification of the outcome of the investigation.

129.    In addition, the FCBA mandates that if any item disputed and reinvestigated is found to be in error or cannot be verified, the creditor or consumer reporting agency must promptly provide the consumer with a corrected copy of the credit report or billing statement, reflecting the changes, at no charge to the consumer.

## COUNT X
### Failure to Investigate and Resolve Consumer Dispute
**(15 U.S.C. § 1666, *et seq.*)**
*AS TO THE DEFENDANTS*

130.    Upon receiving Plaintiff's Notice of Dispute regarding the fraudulent transactions under her name, the Defendants were obligated to investigate Plaintiff's claims, notify Plaintiff of the results of the investigation, and fulfill any additional requirements of the FCBA.

131.    Despite receiving Plaintiff's Notice of Dispute, the Defendants failed to undertake any meaningful investigation into Plaintiff's claims, failed to review the information provided in connection with the dispute and failed to correct the fraudulent or inaccurate information contained in Plaintiff's credit file.

132.    Furthermore, the Defendants failed to notify Plaintiff of the results of their investigation, as no such investigation ever occurred.

133.    As result of the Defendants' conduct, Plaintiff has suffered substantial damages, including but not limited to: (a) loss and reduction of credit; (b) damage to her credit rating; (c) increased debt and financial burden from improperly imposed fees, interest and late charges; (d) the cost of hiring professionals, including attorneys, to assist with credit recovery and prevent any action arising from collections from the fraudulent transactions; (e) dissemination of wrongful

information to third parties; (f) emotional distress and harm to her reputation; and (g) other actual damages resulting from the improper handling of her case.

134.    As a result of the Defendants' conduct, in violation of the FCBA, Plaintiff is entitled to damages including (a) actual damages, including attorney fees incurred to recover from the fraudulent activity; (b) statutory damages; (c) punitive damages due to the reckless and unlawful conduct of the Defendants; and (d) attorneys' fees and costs incurred.

## **DEMAND FOR JURY TRIAL**

135.    Pursuant to Fed. R. Civ. P. 38, Plaintiff respectfully requests a trial by jury on all issues so triable.

**WHEREFORE**, Plaintiff respectfully demands judgment awarding all actual, statutory, and/or punitive damages, recovery of attorneys' fees and costs, and any other relief available pursuant to applicable law.

Dated: Brooklyn, New York
  April 14, 2025

           **PETROFF AMSHEN LLP**
           *Attorneys for Plaintiff,*
           Wenzhen Gao a/k/a Wen Gao a/k/a Wen Zhen Gao

           */s/ Serge F. Petroff*
           Serge F. Petroff, Esq. (ID No. SP9522)
           1795 Coney Island Avenue, Third Floor
           Brooklyn, New York 11230
           Telephone: (718) 336-4200
           Email: spetroff@petroffamshen.com